# Assignment of Army Lawyers to the Department of Justice

The Department of Justice may appoint Army attorneys as special attorneys or Special Assistant United States Attorneys enabling them to perform litigation functions assigned by law to Department of Justice attorneys, provided, however, that the salaries and expenses of Army lawyers so serving must be paid from the Department's own appropriation.

The Department of Justice may use Army attorneys, performing the functions traditionally performed by "agency counsel," to assist the Department in its litigation functions; Army attorneys assisting the Department in this capacity may be paid with Army funds and need not be formally detailed to the Department.

The use of Army lawyers to assist the Department of Justice may violate the Posse Comitatus Act where they perform prosecutorial functions involving direct contact with civilians, unless such Army lawyers are detailed to the Department on a full-time basis and operate under the supervision of Department personnel.

August 22, 1986

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have asked for our opinion on the legal issues presented by a proposal to assign lawyers from the Army Judge Advocate General's Corps (JAGC) to the Department of Justice to assist in connection with certain litigation functions. As discussed in greater detail below, we believe that it would be permissible to implement most of the Army proposal, subject to certain conditions.

Our conclusions may be summarized as follows:

1. The Department of Justice may appoint JAGC attorneys as special attorneys or Special Assistant United States Attorneys under 28 U.S.C. §§ 515(b) or 543 so that they may perform litigation functions that are assigned by law to Department of Justice attorneys. If this is done, however, the salaries and expenses of the JAGC lawyers must be paid from the Department's own appropriation.

2. The Department of Justice may use JAGC attorneys to perform litigation functions traditionally performed by "agency counsel." When Army attorneys are functioning as agency counsel, they may be paid with Army funds, and no formal detail to the Department is necessary. The Department of the Army should determine in each case that it has authority to use its appropriation to assist in connection with particular litigation.

115

3. The Department may use JAGC lawyers to assist in preparing cases and in performing a number of other duties in connection with civil and criminal litigation under our responsibility, without raising issues under the Posse Comitatus Act. However, questions under the Posse Comitatus Act may be raised if military lawyers perform prosecutorial functions involving direct contact with civilians, unless such military lawyers are detailed to the Department on a full-time basis and operate under the supervision of departmental personnel.

## I. The Army Proposal

The Army proposal has two components. The first component would involve full-time assignment of JAGC lawyers to the Civil and Criminal Divisions and various United States Attorneys offices for a period of six months to a year. This component of the program would be administered by Army Headquarters. Its purpose would be to "provide full time assistance" to Department of Justice lawyers in "areas requiring specialization, such as medical malpractice and contract fraud." JAGC lawyers would work under the "direct supervision" of Department of Justice attorneys and would function in both "agency counsel" and "trial attorney" capacity. The JAGC lawyer would prosecute or defend only cases "arising out of Army or Department of Defense activities."

The second component of the Army proposal "provides for the Army to furnish, on a part-time basis, Army attorneys to prosecute in U.S. District Court felonies occurring on the Army installation or to assist in defense of [certain] civil suits." This component of the Army proposal would not be administered by Army Headquarters but would be "dependent upon local arrangements between staff judge advocates or command counsel and U.S. Attorneys." JAGC attorneys would be appointed as Special Assistant United States Attorneys, pursuant to 28 U.S.C. § 543, and their duties would "essentially parallel" those of Assistant United States Attorneys. At the same time, they would "also simultaneously perform their normal duties as agency counsel."[1] The United States Attorney would train and supervise the JAGC attorneys in their duties as Special Assistants, and the JAGC lawyers would "work side-by-side" with an Assistant United States Attorney.

The purpose of the Army proposal is "to provide more and better assistance to the Department of Justice in representing Army interests" and, in the Army's view, the "two-component Army attorney program provides the Department of Justice with the best possible agency support while enabling us to better represent the Army."

It is not clear from the Army proposal exactly what duties could be assigned to JAGC attorneys under the first component of the proposal; in particular, it is not clear whether their duties would be such as to require their appointment as

---

[1] The Army proposal states that "[i]n effect, Special Assistants' duties are those usually performed by agency attorneys right up to the moment Special Assistants step into the courtroom as the primary representative of the United States."

an officer of the Department of Justice.[2] We assume from conversations we have had with Defense Department personnel that the Army proposal contemplates assignment of JAGC attorneys to handle the full range of prosecutorial responsibilities and would thus entail their appointment as Department of Justice attorneys. As discussed above, the second component of the Army proposal expressly provides for the appointment of JAGC lawyers as Special Assistant United States Attorneys to prosecute and defend both civil and criminal cases in the name of the United States.

## II. Authority for the Department of Justice to Employ the Services of Outside Attorneys to Carry Out the Department's Exclusive Responsibilities

Section 516 of Title 28 reserves to officers of the Department of Justice the conduct of litigation in which the United States or one of its agencies is a party. A parallel section, 5 U.S.C. § 3106, provides that, except as otherwise authorized by law, an executive agency "may not employ an attorney . . . for the conduct of litigation in which the United States, an agency, or employee thereof is a party . . . but shall refer the matter to the Department of Justice." There is, however, clear statutory authority for the Department of Justice to use non-departmental attorneys to carry out the Department's litigating functions. As the Army proposal points out, 28 U.S.C. § 543 authorizes the Attorney General to appoint attorneys to assist the United States Attorneys "when the public interest so requires." This appointing authority is a general one, and extends both to the appointment of attorneys from other federal agencies, as well as from the private sector, as "Special Assistant United States Attorneys" to perform departmental duties.[3] Although this section would permit the appointment of attorneys from other agencies to carry out Department of Justice functions, it does not indicate which agency should bear the cost of their services.

---

[2] Attorneys not employed by the Department of Justice must be appointed by the Attorney General as special attorneys in the Department in order to conduct litigation in the name of the United States. *See* 28 U.S.C. § 516 (reserving to "officers of the Department of Justice, under the direction of the Attorney General," the conduct of all litigation in which the United States is a party). *See also In re Persico*, 522 F.2d 41 (2d Cir. 1975); *In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962). The United States Attorney Manual (USAM) recognizes that formal appointment is a prerequisite for "the participation in court proceedings by attorneys not employed by the Department of Justice." *See id.* at 9–2.162. *See also id.* at 1–14.300 ("non- department attorneys" must be appointed before they may conduct grand jury proceedings). In a 1979 opinion, this Office concluded that formal appointment as an attorney of the Department of Justice is necessary before a military lawyer may represent the United States in a judicial proceeding before a United States District Judge or Magistrate. *See* Memorandum from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel to William Tyson, Acting Director, Executive Office for United States Attorneys (Nov. 19, 1979) (1979 Opinion).

[3] Another general source of authority to appoint attorneys from other agencies to assist in carrying out the Department's litigating functions is 28 U.S.C. § 515(b), which authorizes the appointment of "special assistants to the Attorney General" or "special attorneys." Attorneys "specially appointed" under this provision may, when so directed by the Attorney General, "conduct any kind of legal proceeding, civil or criminal . . . which United States Attorneys are authorized by law to conduct." *Id.* § 516(a). Special attorneys appointed under this authority may not be paid an annual salary of more than $12,000. *Id.* § 516(b).

117

Guidance with respect to this question is provided by the Economy Act, 31 U.S.C. § 1535, and the principles of appropriations law on which it rests. The Economy Act provides in pertinent part:

> The head of an agency or major organizational unit within an agency may place an order with a major organizational unit within the same agency or another agency for goods or services if —
>
> (1) amounts are available;
>
> (2) the head of the ordering agency or unit decides the order is in the best interest of the United States Government;
>
> (3) the agency or unit to fill the order is able to provide the ordered goods or services; and
>
> (4) the head of the agency decides ordered goods or services cannot be provided as conveniently or cheaply by a commercial enterprise.

31 U.S.C. § 1535(a). The agency ordering the services, including personnel services, must "promptly" provide reimbursement for their full cost to the agency providing them. 31 U.S.C. 1535(c).

In a recent, thorough examination of the application of the Economy Act to the detail or assignment of personnel from one federal agency to another, the Comptroller General clarified the question of reimbursement in connection with formal inter-agency details. 64 Comp. Gen. 370 (1985). After examining the legislative history of the Economy Act, the Comptroller General concluded that, except in limited circumstances, formal inter-agency details may not be made on a non-reimbursable basis. *Id.* at 380. As discussed in the legislative history, this conclusion is dictated by two generally applicable principles of federal appropriations law: (1) appropriations to an agency are limited to the purposes for which appropriated, 31 U.S.C. § 1301(a), which ordinarily do not include the performance of the assigned functions of other federal agencies; and (2) in the absence of express statutory authority, an agency may not augment its appropriation by using another agency's personnel to carry out its own programs. 64 Comp. Gen. at 377. The exceptions to this rule noted by the Comptroller General would generally not be applicable to the detail of personnel from our client agencies to perform duties that can only be performed by officers of the Department of Justice.[4] We believe that the Comptroller General's

---

[4] The Comptroller General's opinion recognized an exception for "a matter [that is] similar or related to matters ordinarily handled by the loaning agency and that will aid the loaning agency in accomplishing a purpose for which its appropriations are provided." 64 Comp. Gen. at 380. We do not think that this exception applies to the actual conduct of civilian litigation by JAGC lawyers because they do not ordinarily engage in this activity. Obviously, civilian cases that involve the military in some way may be said to "relate[ ] to matters

Continued

118

interpretation of the Economy Act, although not legally binding on the Executive Branch, is correct.

Although the Economy Act may not be formally applicable to the appointment of attorneys from other agencies under 28 U.S.C. § 543, the same principles of appropriations law discussed above would require reimbursement from this Department's appropriations to the detailing agency.

Beyond the general authority for inter-agency details discussed in the foregoing paragraphs, we are aware of no more specific authority for the employment of personnel or funds from the Department of the Army to carry out litigating responsibilities assigned exclusively to this Department. Nor are we aware of any other generally applicable provision of law that would permit the Department to draw on the appropriation of another agency to carry out litigation functions that are by law assigned to this Department. Accordingly, if this Department is to use the services of assigned JAGC attorneys in place of its own attorneys, it can rely only on the general authority for inter-agency details in the Economy Act or on 28 U.S.C. § 543. In either event, the Department must reimburse the Army for the salaries and other expenses of the detailed personnel from its own appropriation.[5]

## III. Authority of the Department of the Army to Use Its Appropriation to Assist with Litigation that Affects Its Mission and Interests

Although Army funds may not be used to do the work of the Justice Department, this is not to say that Army funds and personnel may not be used to assist the Department in performing its litigating functions. Even if Army funds are not available to conduct litigation independently of this Department, they may be used to provide litigation support services.[6] Assuming that Army funds are available to assist in the conduct of particular litigation,[7] we know of

[4] (Continued)
ordinarily handled by the [military]," but if the exception were read this broadly it would swallow up the rule. The Comptroller General's opinion also noted an exception for "details for brief periods when necessary services cannot be obtained, as a practical matter, by other means and the numbers of persons and cost involved are minimal." *Id.* at 381. This exception does not seem to apply here.

[5] When Congress enacts specific authority for one agency to assist another, through the detailing of personnel or otherwise, it generally also gives guidance on the reimbursement question. *See, e.g.,* 10 U.S.C. § 377 (giving the Secretary of Defense discretion to request reimbursement from civilian law enforcement agencies to which the Department of Defense provides assistance under this section); 49 U.S.C. § 324(c) (reimbursement for Defense Department personnel detailed to the Department of Transportation "as may be considered appropriate by the Secretary" of Transportation and the military department involved). This Office has previously analyzed the reimbursement provision of 10 U.S.C. § 377 at length. "Reimbursement for Defense Department Assistance to Civilian Law Enforcement Agencies," 6 Op. O.L.C. 464 (1982).

[6] Despite this Department's exclusive grant of litigating authority, we routinely call upon the attorneys of other agencies, especially those "client" agencies charged with administering the laws at issue in a particular piece of litigation, for assistance in what is commonly known as an "agency counsel" capacity. *See, e.g.,* Memorandum from Larry A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel to Acting Deputy Assistant Attorney General, Lands and Natural Resources Division (Dec. 18, 1978).

[7] Whether the Department of the Army has authority to expend its appropriation in connection with a particular piece of civilian litigation depends upon the circumstances. This is a question best addressed in the
Continued

119

no reason why Army lawyers could not be assigned, on a full- or part-time basis, to provide such support services as may be appropriate and needed under the circumstances. As an opinion of this Office has previously recognized:

> Depending upon the nature of a case, this Department may call upon agency attorneys not only to provide factual material but also to draft pleadings, briefs and other papers. At times, in conjunction with attorneys of this Department, agency attorneys take part in judicial proceedings.

"Department of Justice — Transfer of Funds from Another Agency," 2 Op. O.L.C. 302, 303 (1978).

On the other hand, as discussed above, Army funds may not be used for activities that are reserved by statute to officers of the Department of Justice, such as the responsibility for conducting litigation. We realize that the line between conducting litigation and assisting in the conduct of litigation will be difficult to draw precisely, but the general rule that this Office has previously endorsed is that support services may be provided without reimbursement so long as this Department retains control over the conduct of litigation. 2 Op. O.L.C. at 303. The issue of which litigation expenses must be paid from this Department's appropriation and which may be borne by a client agency was examined in greater detail in a Memorandum of June 26, 1986 to the Director of Litigation Support, Civil Division, from the General Counsel, Justice Management Division. This memorandum notes that "in the absence of specific legislative guidance, substantial weight must be given the good faith judgments and practices of the Civil Division and its client agencies in determining whether specific expenses should be paid by the client agency or the Department of Justice."

### IV. Posse Comitatus Act

The Posse Comitatus Act, 18 U.S.C. § 1385, may also restrict the use of JAGC lawyers by this Department. This Reconstruction Era statute makes it a criminal offense to use "any part of the Army or Air Force as a posse comitatus or otherwise to execute the law." The Posse Comitatus Act was intended to prevent persons subject to military law and discipline from directing commands to ordinary citizens.[8]

The Posse Comitatus Act has been interpreted to bar many uses of military personnel to assist in connection with civilian law enforcement activities,

---

[7] (Continued)

first instance by the Army's own general counsel. We assume that the Army has authority to expend its funds on litigation support services in connection with cases involving such matters as Army procurement, challenges to Army regulations or practices, or damage claims against Army personnel acting in their official capacity.

[8] See 7 Cong. Rec. 3678–81, 4243–47 (1878). *See generally* Note, *The Posse Comitatus Act: Reconstruction Era Politics Reconsidered*, 13 Am. Crim. L. Rev. 703, 704–10 (1976); Meeks, *Illegal Law Enforcement: Aiding Civilian Authorities in Violation of the Posse Comitatus Act*, 70 Mil. L. Rev. 83, 89–93 (1975).

unless Congress has explicitly authorized such assistance. *See, e.g.,* Memorandum from Mary Lawton, Deputy Assistant Attorney General, Office of Legal Counsel to the General Counsel, Department of Defense (Mar. 24, 1978). Assuming that the litigation of civil and criminal cases constitutes the "execution" of the law within the meaning of the Act, the legality of the use of JAGC lawyers by this Department to assist in carrying out its litigating functions would depend upon several factual questions, including the context in which such lawyers functioned and the specific activities in which they were engaged.

In a 1971 opinion of this Office, then-Assistant Attorney General Rehnquist discussed the applicability of the Posse Comitatus Act in connection with the deputization of military personnel to serve as security guards on civilian aircraft. Memorandum from William Rehnquist, Assistant Attorney General, Office of Legal Counsel to the Assistant General Counsel, Department of Defense (Sept. 30, 1971). That opinion concluded that the arrangement there at issue would not violate the Posse Comitatus Act because "individual members of the Armed Forces assigned to and subject to the exclusive orders of the Secretary of Transportation are not 'any part of the Army or Air Force' within the meaning of the Posse Comitatus Act." Under the reasoning of that opinion, we believe that the Posse Comitatus Act would not be implicated if JAGC lawyers were detailed on a full-time basis to the Department of Justice and functioned on a day-to-day basis in an entirely civilian capacity under the supervision of civilian personnel.

On the other hand, serious questions under the Posse Comitatus Act might be raised if military lawyers functioning under the usual military chain-of-command were assigned on a part-time basis to perform civilian law enforcement functions along with their regularly assigned military duties.[9] In order to minimize the risk of contravening this criminal statute pending further examination of the question presented, military lawyers who are not functioning in an entirely civilian environment should not be used to perform any prosecutorial function that involves direct contact with civilians in a law enforcement context, such as the interrogation of witnesses or a personal appearance in court.

SAMUEL A. ALITO, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[9] The Army proposal states that military lawyers assigned on a part-time basis to assist in connection with Justice Department litigation would be supervised by the United States Attorney and "work side-by-side" with an Assistant United States Attorney. However, it is our understanding that in at least some cases military lawyers would be based on a military installation some distance away from the United States Attorney's Office and would be working day-to-day under the direction and supervision of the installation's "command counsel." Unless close and continuous civilian supervision is maintained, it is difficult to see how the standards in the 1971 opinion could be met.